IRELAND

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No.** 17-20238- SHL |
| **v.** | ) | |
| | ) | **18 USC § 1349** |
| **BABATUNDE MARTINS,** | ) | **18 USC § 1343** |
| **VICTOR DANIEL FORTUNE OKORHI** | ) | **18 USC § 1956** |
| **BENARD EMURHOWHOARIOGHO** | ) | **18 USC § 371** |
| **OKORHI,** | ) | **18 USC § 1028A** |
| **MAXWELL PETER,** | ) | **18 USC § 2** |
| **DENNIS MIAH,** | ) | |
| **SUMAILA HARDI WUMPINI,** | ) | |
| **OLUFOLAJIMI ABEGUNDE,** | ) | |
| **AYODEJI OLUMIDE OJO,** | ) | |
| **DANA BRADY,** | ) | |
| **JAMES DEAN, and** | ) | **FILED UNDER SEAL** |
| **JAVIER LUIS RAMOS ALONSO** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

# INDICTMENT

**THE GRAND JURY CHARGES:**

<u>Background</u>

At all times relevant to this Indictment:

1.      A "business email compromise" (BEC) is a type of computer intrusion that occurs
when an employee of a company is fooled into interacting with an email message that
appears to be, but is not, legitimate.   The bogus email usually contains either an
attachment or a link to a malicious website.   Clicking on either will release a virus, worm,
spyware or other program application (also known as "malware") that subsequently
infects the employee's email account and/or computer.   Frequently, the malware spreads

throughout the business' entire computer network.   The malware, once executed, can harvest information, including credentials, and give the intruding party access to sensitive company information.

2.    In one common BEC scam, an intruder monitors email to determine when a large financial transaction is going to take place.   After initial transfer or wiring instructions are conveyed between legitimate parties to the transaction, the intruder sends a follow-up email that appears to be coming from the original legitimate sender.   This "spoofed" email contains a change of plans, instructing that the money being wired go instead to a different account—one that is under the intruder's control and set up for the purpose of receiving the redirected funds.

3.    Electronic mail (email) is sent and received over the Internet.   Data sent over the Internet is broken up into manageable chunks known as "packets."

4.    "Company A" is a full-service real estate company headquartered in Memphis, Tennessee, with 115 offices and more than 3,000 licensed sales associates located throughout its nine-state area of service.   Company A's email servers are maintained in Memphis.

5.    Match.com was an internet dating service whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

6.    Google, Inc. was an internet service provider whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

7.    Yahoo, Inc. was an internet service provider whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

2

8.     Facebook was an internet service provider and social networking site whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

9.     WhatsApp was an encrypted electronic communications platform whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

10.     Twitter was an internet service provider and social media site whose normal activities took place in interstate and foreign commerce, and had an effect on interstate and foreign commerce.

11.     Western Union was a money service business duly registered with the Financial Crimes Enforcement Network authorized to act as a money service business and licensed and/or registered within the various states in which it does business.

12.     MoneyGram was a money service business duly registered with the Financial Crimes Enforcement Network, authorized to act as a money service business, and licensed and/or registered within the various states in which it does business.

13.     Bank of America Corporation is a multinational banking and financial services corporation headquartered in Charlotte, North Carolina, operating in the United States and approximately 40 other countries.   Bank of America is a member of and insured by the Federal Deposit Insurance Corporation (FDIC).

14.     Personal Identification Information (hereinafter, "PII") includes, but is not limited to, name, date of birth, address, social security number, bank account numbers, bank

3

routing numbers, and any other name or number that may be used alone or in conjunction with any other information to identify a specific individual.

15.     **BABATUNDE MARTINS** is a citizen of Nigeria residing in Ghana who utilized and controlled the email account papamart2000@yahoo.com.   Afriocean LTD is a business operated by **BABATUNDE MARTINS** in Accra, Ghana.

16.     **VICTOR DANIEL FORTUNE OKORHI** ("**VICTOR OKORHI**") is a citizen of Nigeria residing in Ghana who utilized and controlled the email and/or cloud storage accounts vicfoko@yahoo.com, VicdarycomLTD@gmail.com, and vicdarycomltd@icloud.com.   Vicdary Company LTD is a business operated by **VICTOR DANIEL FORTUNE OKORHI** in Accra, Ghana.

17.     **BENARD EMURHOWHOARIOGHO OKORHI** ("**BENARD OKORHI**") is a citizen of Nigeria residing in Ghana who utilized and controlled the email accounts Marc.Richards@aol.com and benardokorhi@yahoo.com.   Coolben Royal Links LTD is a business operated by **BENARD OKORHI** in Accra, Ghana.

18.     **MAXWELL PETER**, a/k/a Peter Maxwell ("**MAXWELL**"), is a citizen of Ghana who utilized and controlled the email accounts petermaxwell200@gmail.com and sandralin200@yahoo.com,       as       well       as       the       Facebook       account facebook.com/maxwell.peter.5688.

19.     **DENNIS MIAH**, a/k/a Dennis Brown, a/k/a Dr. Den Brown, is a citizen of Ghana who utilized and controlled the email accounts JimRoyAirSeal1@yahoo.com and drdenbrown@yahoo.com, as well as the Facebook account facebook.com/Oga.Bossson and the Twitter handle @Oga.Bossson.

4

20.     **SUMAILA HARDI WUMPINI**, is a resident of Ghana who utilized and controlled the email account hardi765_new@hotmail.com and the Facebook account www.facebook.com/Wumpini.Hardy.

21.     **OLUFOLAJIMI ABEGUNDE** is a Nigerian citizen residing in Atlanta, Georgia.

22.     **AYODEJI OLUMIDE OJO** is a Nigerian citizen residing in Nigeria, but also lives with **ABEGUNDE** in Atlanta, Georgia, when he is in the United States.

23.     **DANA BRADY** is a citizen of the United States, residing in Washington, who utilized and controlled the email account bradydana50@gmail.com.

24.     **JAMES DEAN** is a citizen of the United States, residing in Indiana.

25.     **JAVIER LUIS RAMOS ALONSO** is a resident of the United States, residing in California.

26.     D.G. is a citizen of the United States, residing in Mississippi, who utilized and controlled the email accounts d2t2green696@yahoo.com and d2t2green696@gmail.com.

27.     J.R. is a citizen of the United States, residing in New Jersey, who utilized and controlled the email account LRIGNWM@yahoo.com.

28.     M.Z. is a citizen of the United States, residing in Utah, who utilized and controlled the email account CMIMIGO@aol.com.

29.     T.W. is a citizen of the United States, residing in Tennessee.

30.     J.B. is a citizen of the United States, residing in Alabama.

31.     C.M. is a citizen of the United States, residing in Tennessee, within the Western District of Tennessee.

32.     C.W. is a citizen of the United States, residing in Tennessee.

33.     A.K. is a citizen of the United States, residing within the Western District of Tennessee.

34.     V.M. is a citizen of the United States, residing in Georgia.

## COUNT 1

### Conspiracy to Commit Fraud – 18 U.S.C. §1349

Paragraphs 1 through 34 are re-alleged and incorporated by reference as if fully set forth herein.

35.     Beginning in at least 2012, and continuing thereafter until the date of this indictment, in the Western District of Tennessee and elsewhere, the defendants,

**BABATUNDE MARTINS
VICTOR DANIEL FORTUNE OKORHI
BENARD EMURHOWHOARIOGHO OKORHI
MAXWELL PETER
DENNIS MIAH
SUMAILA HARDI WUMPINI
OLUFOLAJIMI ABEGUNDE
AYODEJI OLUMIDE OJO
DANA BRADY
JAMES DEAN
JAVIER LUIS RAMOS ALONSO**

knowingly and willfully conspired and agreed, together and with each other, and with other persons known and unknown to the grand jury, to commit the offenses of mail fraud, wire fraud, and bank fraud; that is, the defendants:

(a) Pursuant to Title 18, United States Code, Section 1341, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations and promises, and for

6

the purpose of executing and attempting to execute such scheme and artifice, knowingly caused to be delivered by the United States Postal Service and private and interstate commercial carriers matters according to the directions thereon;

(b) Pursuant to Title 18, United States Code, Section 1343, devised and intended to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute such scheme and artifice, transmitted and caused to be transmitted in interstate and foreign commerce certain wire communications;

(c) Pursuant to Title 18, United States Code, Section 1344, knowingly executed and attempted to execute a scheme and artifice to obtain funds under the custody and control of financial institutions, by means of false and fraudulent pretenses, representations, and promises.

### Object of the Conspiracy

36.     It was the object of the conspiracy that the defendants would unjustly enrich themselves and each other by conducting multiple complex financial fraud schemes via the internet. The various fraud schemes included, among others, business email compromise, romance scams, fraudulent-check scams, gold-buying scams, advance-fee scams, and credit card scams. The proceeds of these scams, both money and goods, were shipped and/or transferred from the United States to Accra, Ghana—and other locations in Nigeria and South Africa—through a complex network of both complicit and unwitting individuals recruited through the various internet scams.

7

## Manner and Means

The object of the conspiracy was to be accomplished by the following manner and means, among others:

37.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI,** and/or **MIAH** would obtain internet protocol (IP) addresses of susceptible individuals, or cause IP addresses of susceptible individuals to be obtained, and target those individuals through various internet schemes.

38.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI** and/or **MIAH** would obtain IP addresses for potentially vulnerable email and business servers, or cause IP addresses for potentially vulnerable email and business servers to be obtained, and target those servers for intrusion.

39.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI** and/or **MIAH** would use United States-based IP addresses and virtual private networks (VPNs) to mask the international locations from which they were accessing the internet because many websites and servers, such as credit card transaction processors and dating websites, actively block access sought through IP addresses based in Africa.

40.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI** and/or **MIAH** would spoof emails and send communications, or cause emails to be spoofed and sent, under the identity of the target of the spoof.

41.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR DANIEL FORTUNE OKORHI, BENARD EMURHOWHOARIOGHO OKORHI, MAXWELL, VICTOR OKORHI, BENARD OKORHI, MIAH, WUMPINI, BRADY, DEAN, OJO,** and others, would open bank accounts for the purpose of receiving fraudulently-obtained funds and sending fraudulently-obtained funds to other accounts under control of the defendants.

42.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI,** and/or **MIAH** would monitor the email accounts of professionals in the real estate field to determine when fund transfers were scheduled to take place.

43.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI,** and/or **MIAH** would spoof the email of parties to financial transactions involving real estate, sending instructions that would redirect wires and transfers of funds to accounts under the control of the defendants and their associates.

44.    It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR OKORHI, BENARD OKORHI, MAXWELL,** and/or **MIAH** would instruct individuals who received fraudulently-obtained funds to use the proceeds to purchase goods, including construction materials, cellular phones, and other electronics, and cause those goods to be sent to Ghana for use and resale, and the benefit of the defendants and their co-conspirators and associates.

45.     It was a part of the conspiracy that the defendants **MAXWELL, VICTOR OKORHI, BENARD OKORHI,** and/or **MIAH** would assume false identities on dating websites and establish email accounts under fictitious names.

46.     It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR OKORHI, BENARD OKORHI, MAXWELL,** and/or **MIAH** would seek out and identify potential victims through, among other means, online romance scams, gold-buying scams and advance-fee scams.

47.     It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR OKORHI, BENARD OKORHI, MAXWELL,** and/or **MIAH** would obtain stolen PII, compromised credit card numbers, banking information, and IP addresses by purchasing it from underground forums, often on the internet, operated by individuals (commonly known as "hackers") who engaged in the theft and sale of such information. This information was used by the defendants in furtherance of the schemes to defraud.

48.     It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR OKORHI, BENARD OKORHI, MAXWELL,** and/or **MIAH** would carry on, or cause to be carried on, fictitious online romantic relationships with the victims in order to convince them to carry out various acts that furthered the objective of the conspiracy. These acts included, among other things, receiving and shipping merchandise, depositing and forwarding counterfeit checks, and transferring the proceeds of the conspiracy via wire, U.S. Mail, ocean freight, and express package delivery services.

49.     It was a part of the conspiracy that the defendants **BABATUNDE MARTINS, VICTOR OKORHI, BENARD OKORHI, MAXWELL, MIAH,** and/or **WUMPINI** would

10

cause cellular phones to be activated and voice-over-internet-protocol (VoIP) phone accounts to be established in the United States.   The phones associated with those accounts could then be used in Africa to make calls to the United States.   The calls would appear to originate in the United States, rather than from overseas.

50.     In order to accomplish the object of the conspiracy, the defendants **BABATUNDE MARTINS, MAXWELL, VICTOR OKORHI, BENARD OKORHI, MIAH, WUMPINI, ABEGUNDE, OJO, BRADY, RAMOS,** and their co-conspirators committed the following acts, among others, in furtherance of the conspiracy:

a.     On or about May 16, 2015, the email accounts JimRoyAirSeal1@yahoo.com and drdenbrown@yahoo.com were created by **MIAH** or an unknown co-conspirator.

b.     In or about May 2015, a dating website profile of "James Roy" was created by **MIAH** or an unknown co-conspirator.

c.     In or about 2012, the identity "Sandra Lin" was created by **MAXWELL** or an unknown co-conspirator.

d.     In or about May 26, 2000, email account papamart2000@yahoo.com was created by defendant **MARTINS** or an unknown co-conspirator.

e.     In or about June 2013, **BENARD OKORHI** established the shell company Coolben Ltd., at least in part, for the purpose of receiving fraudulently obtained funds from United States-based co-conspirators.

f.      On or before May 30, 2012, **VICTOR OKORHI** established the shell company Vicdary Ltd., at least in part, for the purpose of receiving fraudulently obtained funds from United States-based co-conspirators.

g.      In or about March 2015, **VICTOR OKORHI** used the shell company Vicdary Ltd., to receive fraudulently obtained funds from coconspirator T.W.

h.      In or about 2012, through the date of this indictment, **MIAH** made online purchases with fraudulently obtained credit card numbers using a remote desktop protocol (RDP) to make it appear that the purchases were being made within the United States.

i.      On or about December 13, 2016, **MIAH** caused construction materials to be purchased with fraudulently obtained funds, and caused a freight container of construction supplies to be sent to him in Ghana.

j.      On or about June 11, 2015, **MAXWELL** posted to Facebook that "Chairman Wumpini" had notified him that fraudulently-obtained funds had arrived and were ready for him to obtain.

k.      On or about December 13, 2016, **MIAH** used fraudulently obtained funds to procure shipping labels and emailed those labels to a known co-conspirator for use in shipping items purchased with fraudulently-obtained funds to Africa.

l.      On or about June 30, 2016, unknown coconspirators spoofed the email accounts of Company A's agents and fraudulently misdirected funds that had been intended for a real estate transaction to a different destination.

12

m.    On or about June 30, 2016, unknown coconspirators obtained information worth in excess of $5,000—that is, the closing information of a real estate transaction, which was worth approximately $33,495—after gaining unauthorized access into the email servers of Company A.

n.    Also on or about June 30, 2016, **MAXWELL** instructed J.R. to wire funds that had been obtained from the actions in the preceding paragraph to **MARTINS** in Ghana.

o.    On or about June 30, 2016, the wire transfer to **MARTINS** from the June 30 incident involving Company A was recalled due to suspicion of fraud.

p.    In or about August 2016, **OJO** opened a new bank account at Wells Fargo after a previous account at Bank of America had been shut down on suspicion of fraud, and used **ABEGUNDE's** address for the new account, into which proceeds from the closed account were deposited.

q.    In or about October 2016, **ABEGUNDE** and **OJO** agreed that **OJO** would use **ABEGUNDE's** address in the United States for the purpose of opening a Wells-Fargo bank account, knowing that **OJO** needed a United States address to associate with the account, as **OJO** was a resident of Nigeria and did not reside in the United States.

r.    In or about April 16, 2014, within the Western District of Tennessee and elsewhere, **BENARD OKORHI**, using the email account Marc.Richards@aol.com, directed C.M. to obtain cash advances totaling $1,950 from credit cards and send the proceeds to recipients in Ghana, Africa. C.M. was also instructed by **BENARD OKORHI**

to purchase five iPhone 5s cellular phones from an Apple store located within the Western District of Tennessee, and ship those phones to recipients in Ghana, Africa.

      s.    In a June 1, 2015 email from **MIAH**, using drdenbrown@yahoo.com, to **BENARD OKORHI**, at the email address Marc.Richards@aol.com, **MIAH** requests that **BENARD OKORHI** call the target of a romance scam, using **BENARD OKORHI**'s Americanized accent in the furtherance of that particular part of the scam. **MIAH** wrote: "Talking to her will make her believe more and understand things well."

      t.    On or about March 3, 2017, **DEAN** transferred money to a known co-conspirator, knowing that amount represented the proceeds of fraud.

All in violation of Title 18, United States Code, Sections 1349.

## COUNTS 2 – 8

### Wire Fraud – 18 U.S.C. § 1343

      The facts set forth in paragraphs 1 through 50 above are re-alleged and incorporated by reference as if fully set forth herein.

51.    Beginning in at least 2012, and continuing thereafter until the date of this indictment, in the Western District of Tennessee and elsewhere, the defendants, devised and intended to devise a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

52.    On or about each of the dates set forth below, for the purpose of executing the scheme described above, and attempting to do so, the defendants caused to be transmitted by means of wire communication in interstate commerce, the signals and sounds described below for each count, each transmission constituting a separate count:

| COUNT | DATE | TRANSMISSION |
|---|---|---|
| 2 | 4/16/14 | **BENARD EMURHOWHOARIOGHO OKORHI**, using an alias associated with the email account Marc.Richards@aol.com, directed C.M. to obtain cash advances totaling $1,950 from her credit cards and send the proceeds to recipients in Ghana, Africa. |
| 3 | 4/16/14 | **BENARD EMURHOWHOARIOGHO OKORHI**, using an alias associated with the email account Marc.Richards@aol.com, instructed C.M. to purchase five iPhone 5s cellular phones from an Apple store located within the Western District of Tennessee and ship those phones to recipients in Ghana, Africa. |
| 4 | 7/1/16 | At **MAXWELL PETER'S** instruction, J.R. fraudulently accepted a $33,495 wire transfer into his TD Bank account, with that amount representing the proceeds of a business email compromise of Company A in Memphis, TN, with J.R. afterwards sending a wire transfer of $35,000 to **BABATUNDE MARTINS'** Guaranty Trust Bank account ending 0230. |
| 5 | 7/25/16 | **JAVIER LUIS RAMOS ALONSO** accepted a $154,371 wire, representing the proceeds of a BEC of Company A in Memphis, TN, into his Wells Fargo account ending 7688, and then subsequently deposited the proceeds of this and/or subsequent BECs electronically into an account controlled by **AYODEJI OLUMIDE OJO** in Atlanta, GA. |
| 6 | 5/26/17 | **MAXWELL PETER**, in communications sent to J.R.'s WhatsApp instant-messaging account, directed an FBI Agent acting in an undercover capacity to receive a $15,000 check representing the proceeds of fraud.  The FBI agent received these communications on a cellular telephone that was located in the Western District of Tennessee. |
| 7 | 5/30/17 | **MAXWELL PETER**, in communications sent to J.R.'s WhatsApp instant-messaging account, directed an FBI Agent acting in an undercover capacity to send $5,000 of fraudulently obtained funds to **MAXWELL PETER** in Ghana.  The FBI agent received these communications on a cellular telephone that was located in the Western District of Tennessee. |
| 8 | 6/2/17 | **MAXWELL PETER**, in communications sent to J.R.'s WhatsApp instant-messaging account, directed an FBI Agent acting in an undercover capacity to send a $15,000 |

| | | check that represented the proceeds of fraud to **MAXWELL PETER** in Ghana. The FBI agent received these communications on a cellular telephone that was located in the Western District of Tennessee. |
|---|---|---|

All in violation of Title 18, United States Code, Section 1343 and Section 2.

## COUNT 9

### Money Laundering – 18 U.S.C. § 1956(h)

The facts set forth in paragraphs 1 through 50 above are re-alleged and incorporated by reference as if fully set forth herein.

53. Beginning in at least 2012, and continuing thereafter until the date of this indictment, in the Western District of Tennessee and elsewhere, the defendants,

**BABATUNDE MARTINS
MAXWELL PETER
DENNIS MIAH
SUMAILA HARDI WUMPINI
VICTOR DANIEL FORTUNE OKORHI
BENARD EMURHOWHOARIOGHO OKORHI
OLUFOLAJIMI ABEGUNDE
AYODEJI OLUMIDE OJO
DANA BRADY
JAMES DEAN
JAVIER LUIS RAMOS ALONSO**

did knowingly combine, conspire and agree with each other and with other persons known and unknown to the grand jury, to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, specifically to knowingly conduct and attempt to conduct, financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, mail fraud, bank fraud, and unauthorized access of a protected computer, knowing that the transactions were designed in whole or in part to conceal and disguise the nature,

location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity; all in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).   The manner and means used to accomplish the objectives of the conspiracy included, among others, all of the acts described in paragraphs 32 through 45 of this indictment, all in violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNT 10

### Conspiracy to Commit Computer Fraud – 18 U.S.C. § 371

Paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

54.     Beginning in at least 2012, and continuing thereafter until the date of this indictment, in the Western District of Tennessee and elsewhere, the defendants,

**BABATUNDE MARTINS
MAXWELL PETER
DENNIS MIAH
VICTOR DANIEL FORTUNE OKORHI
BENARD EMURHOWHOARIOGHO OKORHI
SUMAILA HARDI WUMPINI**

and other persons known and unknown to the grand jury, did knowingly combined, conspired and agreed with each other to commit and attempt to commit fraud and related activity in connection with computers; that is, to execute a scheme and artifice to obtain from the electronic files and communications of real estate professionals associated with "Company A"—that is, information about pending wire transfers in order to re-direct the

17

scheduled transfers of funds to accounts under the control of defendants and their co-conspirators (the "scheme"), and for the purpose of executing and attempting to execute the scheme did intentionally access without authorization a computer and thereby obtained information from that protected computer, namely, information about the June 30, 2016 wire transfer, worth in excess of $5,000, in violation of Title 18, United States Code, Sections 1030(a)(2)(C), 1030(a)(4)1030(c)(2)(B)(i), 1030(c)(3)(A), & 1030(c)(2)(B)(iii); all in violation of Title 18, United States Code, Section 371.

### Object of the Conspiracy

55.    It was the object of the conspiracy that the defendants and their co-conspirators would unjustly enrich themselves and each other by learning when money was to be wired in connection with real estate transactions and re-directing those funds to accounts controlled by the defendants.

### Manner and Means of the Conspiracy

56.    The manner and means of the conspiracy are described in Paragraphs 37 through 50 of this Indictment.

### Overt Acts

57.    The overt acts in furtherance of the conspiracy and to effect the object of the conspiracy include, among others, the actions described in Paragraph 50(l) through 50(q) of this Indictment.

All in violation of Title 18, United States Code, Sections 371.

## COUNT 11

18

**Aggravated Identity Theft – 18 U.S.C. § 1028A(a) and (b)**

Paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

58.     On or about June 30, 2016, in the Western District of Tennessee and elsewhere, the defendants,

**BABATUNDE MARTINS
MAXWELL PETER
DENNIS MIAH**

during and in relation to a violation of Title 18, United States Code, Section 1343, knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7)(A), specifically, the name, identifying information, and unique electronic address of V.M.; with the intent to commit, or to aid or abet, or in connection with obtaining anything of value aggregating $1,000 or more during a one-year period as charged in Counts One, Four, Nine, and Ten; all in violation of Title 18, United States Code, Section 1028A(a) and (b), and Section 2.

**COUNT 12**

**Aggravated Identity Theft – 18 U.S.C. § 1028A(a) and (b)**

Paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

19

59.     On or about July 25, 2016, in the Western District of Tennessee and elsewhere, the defendants,

**OLUFOLAJIMI ABEGUNDE**
**AYODEJI OLUMIDE OJO**
**JAVIER LUIS RAMOS ALONSO**

during and in relation to a violation of Title 18, United States Code, Section 1343, knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7)(A), specifically, the name, identifying information, and unique electronic address of A.K., with the intent to commit, or to aid or abet, or in connection with obtaining anything of value aggregating $1,000 or more during a one-year period as charged in Counts One, Five, Nine, and Ten; all in violation of Title 18, United States Code, Section 1028A(a) and (b), and Section 2.

## COUNT 13

### Aggravated Identity Theft – 18 U.S.C. § 1028A(a) and (b)

Paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

60.     On or about May 2015, in the Western District of Tennessee and elsewhere, the defendant,

**DENNIS MIAH**

during and in relation to a violation of Title 18, United States Code, Section 1343, knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section

20

1028(d)(7)(A), specifically, the name, identifying information, and unique electronic address of C.W., with the intent to commit, or to aid or abet, or in connection with obtaining anything of value aggregating $1,000 or more during a one-year period as charged in Counts One, Four, Nine, and Ten; all in violation of Title 18, United States Code, Section 1028A(a) and (b), and Section 2.

## COUNT 14

### Aggravated Identity Theft – 18 U.S.C. § 1028A(a) and (b)

Paragraphs 1 through 50 are re-alleged and incorporated by reference as if fully set forth herein.

61.     On or about April 8, 2017, in the Western District of Tennessee and elsewhere, the defendant,

### MAXWELL PETER

during and in relation to a violation of Title 18, United States Code, Section 1343, knowingly transferred, possessed and used, without lawful authority, a means of identification of another person, as defined in Title 18, United States Code, Section 1028(d)(7)(A), specifically, the name, identifying information, and unique electronic address of J.R., with the intent to commit, or to aid or abet, or in connection with obtaining anything of value aggregating $1,000 or more during a one-year period as charged in Counts One, Four, Nine, and Ten; all in violation of Title 18, United States Code, Section 1028A(a) and (b), and Section 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

21

1.     The allegations contained in Counts 1 through 14 of this indictment are re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1) and (2)(A) and (B), and 1030(i), and Title 28 United States Code, Section 2461(c).

2.     Upon conviction for violating Title 18, United States Code, Sections 1341, or 1343 as set forth in Counts 2-8 of this indictment, or a conspiracy to violate same, the defendants **BABATUNDE MARTINS, VICTOR DANIEL FORTUNE OKORHI, BENARD EMURHOWHOARIOGHO OKORHI, MAXWELL PETER, DENNIS MIAH, SUMAILA HARDI WUMPINI, OLUFOLAJIMI ABEGUNDE, AYODEJI OLUMIDE OJO, DANA BRADY, and JAVIER LUIS RAMOS ALONSO** shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of said offenses.   The property to be forfeited includes, but is not limited to, the following:

a.     residences and real property;

b.     vehicles;

c.     electronic devices;

d.     currency and bank accounts; and

e.     personal items.

If any of property described above, as a result of any act or omission of the defendants:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to or deposited with a third party;

c.     has been placed beyond the jurisdiction of the court;

22

d.      has been substantially diminished in value; or

d.      has been commingled with other property which cannot be divided without

difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1) and Title 28, United States Code, Section 2461(c).


3.      Upon conviction for violating Title 18, United States Code, Section 1349,

conspiracy to commit wire fraud, or Title 18, United States Code, Section 371, conspiracy

to commit computer fraud pursuant to Title 18, United States Code, Section 1030, set

forth in Counts 1 and 10 of this indictment, the defendants **BABATUNDE MARTINS,**

**VICTOR DANIEL FORTUNE OKORHI, BENARD EMURHOWHOARIOGHO OKORHI,**

**MAXWELL PETER, DENNIS MIAH, SUMAILA HARDI WUMPINI, OLUFOLAJIMI**

**ABEGUNDE, AYODEJI OLUMIDE OJO, DANA BRADY, JAMES DEAN, and JAVIER**

**LUIS RAMOS ALONSO** shall forfeit to the United States, pursuant to Title 18, United

States Code, Sections 982(a)(2)(B) and 1030(i):

a.      pursuant to Title 18, United States Code, Sections 982(a)(2)(B) and 1030(i),

any property, real or personal, constituting, or derived from, proceeds obtained directly or

indirectly as a result of such offense; and

b.      pursuant to Title 18, United States Code, Section 1030(i), any personal

property that was used or intended to be used to commit or to facilitate the commission

of such offense.   The property to be forfeited includes, but is not limited to:

1.      real and personal property, electronic devices, construction materials, bank accounts, and

2.      A sum of money equal to the proceeds derived from or obtained as a result of such offense.

If any of property described above, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to or deposited with a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

d.      has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b) and 1030(i); all pursuant to Title 18, United States Code, Sections 982(a)(2)(B), 982(b) and 1030(i), and Title 21, United States Code, Section 853.

4.      Pursuant to Title 18, United States Code, Section 982(a)(1), upon conviction of an offense in violation of Title 18, United States Code, § 1956 as charged in Count 10 of this indictment, the defendants **BABATUNDE MARTINS, VICTOR DANIEL FORTUNE OKORHI, BENARD EMURHOWHOARIOGHO OKORHI, MAXWELL PETER, DENNIS MIAH, SUMAILA HARDI WUMPINI, OLUFOLAJIMI ABEGUNDE, AYODEJI OLUMIDE OJO, DANA BRADY, JAMES DEAN, and JAVIER LUIS RAMOS ALONSO** shall forfeit

24

to the United States any property, real or personal, involved in such offense and any property traceable to property.   The property to be forfeited includes, but is not limited to, the following:

      a. ·    residences and real property;

      b.    vehicles;

      · c.    electronic devices;

      · d.    currency and bank accounts; and

      e.    personal items.

Further, if any property described above, as a result of any act or omission of the defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to or deposited with a third party;

      c.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21,

United States Code, Section 853(p), as incorporated by Title 18, United States Code,

Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

**A TRUE BILL:**

**F O R E P E R S O N**

**LAWRENCE J. LAURENZI**
**ACTING UNITED STATES ATTORNEY**

**DATE**

26